| | |
|---|---|
| DIANE MENEAR and CANDICE BENTLEY, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Case No.: 17-cv-318 |
| ) | **CLASS ACTION COMPLAINT** |
| Plaintiffs, ) ) | |
| vs. ) | **Jury Trial Demanded** |
| ) | |
| ALLIANCE ONE RECEIVABLES ) MANAGEMENT, INC. and CAPITAL ONE ) BANK USA, N.A., ) ) | |
| Defendants. ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, chapter 427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.      Plaintiff Diane Menear is an individual who resides in the Eastern District of Wisconsin (Waukesha County).

4.      Plaintiff Candice Bentley is an individual who resides in the Eastern District of Wisconsin (Ozaukee County).

5.     Plaintiffs are "consumers" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from them debts allegedly incurred for personal, family or household purposes, namely personal credit card account debts.

6.     Defendant Alliance One Receivables Management, Inc. ("AOR") is debt collection agency with its principal place of business located at 4850 E Street Road, Suite 300, Trevose, PA 19053.

7.     AOR is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.     AOR is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. AOR is a debt collector as defined in 15 U.S.C. § 1692a.

9.     Defendant Capital One Bank (USA), N.A. ("Capital One") is a national bank with its primary place of business at 1680 Capital One Drive, McLean, Virginia 22102-3491.

10.     Capital One conducts significant business in the State of Wisconsin.

11.     Capital One is engaged in the business of collecting debts owed to itself that were incurred for personal, family or household purposes.

12.     Capital One is a "merchant" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(25), in that it extended credit to Plaintiff Menear.

13.     The alleged debt that AOR was attempting to collect from Plaintiff Menear arose from alleged purchases on Plaintiff's personal Capital One credit card account.

14.     Credit card accounts are "open-end credit plans," pursuant to Wis. Stat. § 421.301(27)(a). "Open-end credit plans" are, by definition, "consumer credit transactions." Wis. Stat. § 421.301(10) ("The term [consumer credit transaction] includes … transactions pursuant to open-end credit plans.")

2

15.     With respect to Plaintiff Menear's and the class members' alleged debts, Capital One is a debt collector engaging in debt collection, as defined in Wis. Stat. §§ 427.103(2) and (3) ("Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer. "Debt collector" means any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms.).

16.     The Western District of Wisconsin has also noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

## FACTS

### *Menear Letters*

17.     On or about June 22, 2016, Capital One mailed a debt collection letter to Plaintiff Menear, regarding an alleged debt allegedly owed to Capital One. A copy of this letter is attached to this Complaint as Exhibit A.

18.     Upon information and belief, the alleged debt referred to in Exhibit A is a credit card account, with an account number ending with the four digits 9635.  At the time Exhibit A was mailed, the account was allegedly owed to Capital One.

19.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

20.     Upon information and belief, Exhibit A is a form debt collection letter used by Capital One to attempt to collect alleged debts.

3

21. <u>Exhibit A</u> contains bold, all-capitalized text at the top of the letter:

# ACCOUNT MAY BE SENT TO A LAWYER FOR REVIEW IF MISSED PAYMENTS CONTINUE.

22. <u>Exhibit A</u> also contains the following language:

Keep in mind that if this account is charged off, the account will be closed and you will still be responsible for paying the full balance. If you continue to miss payments, this account may be forwarded to a lawyer in your state to review for a possible lawsuit.\* We want to prevent this from happening. Take a look at some of your options:

23. <u>Exhibit A</u> also contains a "non-disclaiming-disclaimer":

\*No decision has been made to sue you yet. You'll have an opportunity at any court hearing to raise any applicable defenses or property exemptions.

24. Those two statements together are inherently contradictory and confusing. The unsophisticated consumer would interpret them as saying that Capital One will sue the consumer if the consumer does not pay.

25. The above language in <u>Exhibit A</u> is false, misleading and confusing to the unsophisticated consumer.

26. Further, at the time <u>Exhibit A</u> was sent to Plaintiff Menear, Capital One did not intend to sue Plaintiff Menear, even if no payments were made on the account.

27. Despite the clear language threatening to send the account to "a lawyer in your state" and bring a lawsuit against Plaintiff Menear, Capital One instead hired a third party, non-attorney debt collection agency, Alliance One Receivables Management, Inc. ("AOR"), to collect the debt.

28. On or about September 19, 2016, AOR mailed a debt collection letter to Plaintiff regarding the same alleged debt, an account allegedly owed to "Capital One Bank (USA), N.A.,"

4

with an account number ending in the same four digits, 9635, as the Capital One account listed in Exhibit A. A copy of the AOR letter is attached to this complaint as Exhibit B.

29. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

30. Upon information and belief, Exhibit B is a form debt collection letter used by AOR to attempt to collect alleged debts.

31. Plaintiff used Capital One credit card only for personal, family or household purposes, namely, purchases of household goods and services.

32. Plaintiff did not open or use the credit card account for any business purpose.

33. Exhibit B states the following:

Original Creditor: CAPITAL ONE BANK (USA), N.A
Charge-Off Amount: $4096.44
Interest*: $0.00
Non-Interest Charges/Fees*: $0.00
Payments Made*: $0.00
*Amount listed accrued since charge-off

34. Exhibit B also states:

Please keep in mind, interest and fees are no longer being added to your account. That means every dollar you pay goes towards paying off your balance. We want to make this a positive experience and look forward to working with you.

35. Exhibit B is confusing and misleading to the unsophisticated consumer.

36. Exhibit B threatens to collect "Interest" and "Non-Interest Charges/Fees." Although the amounts of each in Exhibit B are $0.00, the letter implies that there could be interest or fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-

5

cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

37.     Exhibit B then states, at the end, that interest and fees are *no longer* being added to Plaintiff's account.

38.     Upon information and belief, AOR does not actually add interest and fees to consumer collection accounts.

39.     Further, AOR could not add any "fees" to Plaintiff's account.

40.     Any purchases made with a personal credit card account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

41.     Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

42.     Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

43.     The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

6

44.     Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

45.     Because credit card transactions are consumer credit transactions, <u>Exhibit B</u> falsely states or implies that AOR has a right to add collection fees to the debt.

46.     Even if a provision of any agreement between Plaintiff and the original creditor would purport to permit AOR to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

47.     <u>Exhibit B</u> also contains the following text:

Our client has identified your account as eligible for referral to its attorney network in your state for review for possible legal action. Please note that no decision has been made as to whether legal action will be taken. That decision can be made only by an attorney, and an attorney has not yet reviewed your account. Our role is to give you an opportunity to avoid the possibility of referral for legal review by our client, by establishing a repayment arrangement with you.

<u>Exhibit B</u>.

48.     The above language is false, misleading and confusing to the unsophisticated consumer. AOR has no basis to make such claims.

49.     Capital One is the eighth largest bank in the United States. https://en.wikipedia.org/wiki/Capital_One. In addition to credit cards, it specializes in home loans, auto loans, banking and savings products.

50.     AOR has no basis to assert that Capital One may refer Plaintiff's account to a law firm for review for possible legal action if Plaintiff does not "establish a repayment arrangement" with AOR.

7

51.     Upon information and belief, AOR has no input in, or inside information into Capital One's business practices with respect to lawsuits or otherwise.

52.     Moreover, lawsuits are not the "regular course" for Capital One. Upon information and belief, Capital One sends the vast majority of post charge-off, delinquent accounts, including Menear's account, to collection agencies and/or to debt purchasers, and also continues ordinary, telephonic and direct mail collection efforts on its own behalf, instead of initiating legal action.

53.     Upon information and belief, the decision of how to collect consumers' accounts is generally made months after letters in the form of Exhibit B is sent to customers, and is often made automatically, by computer, with little or no human input.

54.     The statements about referral to an attorney network in Plaintiff's state for legal review and that Plaintiff can avoid such an action if a repayment plan with AOR is established together falsely indicates to the unsophisticated consumer that litigation is imminent.

55.     Upon information and belief, Capital One has not filed a lawsuit against Plaintiff. A search of CCAP shows no civil actions filed by Capital One against Plaintiff Menear in Wisconsin, more than five months after Defendant sent Exhibit B to Plaintiff.

56.     On or around December 6, 2016, AOR mailed another debt collection letter to Plaintiff Menear regarding the same alleged debt, an account allegedly owed to "Capital One Bank (USA), N.A.," with an account number ending in the same four digits, 9635. A copy of this AOR letter is attached to this complaint as Exhibit C.

57.     Upon information and belief, the alleged debt identified in Exhibit C was the same Capital One account as described in Exhibits A and B.

58.     Upon information and belief, Exhibit C is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

59.     Upon information and belief, Exhibit C is a form debt collection letter used by AOR to attempt to collect alleged debts.

60.     Exhibit C states the following:

## Balance: $4,096.44

61.     Exhibit C also contains the following text:

reviewed your account.
At this time, we would like to make you aware of some of the payment options available to you to resolve your account.
  ✓ A lump-sum reduced payoff of $2,253.05.
  ✓ 12 monthly payments of $204.82.
  ✓ 19 monthly payments of $140.14.
  ✓ Pay your account in full with 42 monthly installments of $97.52.

Exhibit D.

62.     However, the "Pay your account in full with 42 monthly installments" option does not add up to the "Balance."

63.     42 monthly payments of $97.52 equals a total of $4095.84.

64.     The option leaves the consumer short of the amount of the "Balance."

65.     The language in Paragraph 61 is confusing and misleading to the unsophisticated consumer.  Exhibit C includes a 42 month payment option to "Pay your account in full."

66.     However, the "pay in full" payment option in Exhibit C does not actually add up to the full "Balance," or amount of the debt, as listed in Paragraph 60.

67.     Exhibit C is ambiguous and capable of at least two meanings. It is unclear whether completing the "paid in full" payment plan, which does not add up to the actual amount

9

of the debt, would be treated as a settlement or as a partial payment against Plaintiff's full balance. <u>Exhibit C</u>.

68.     AOR's language leaves open the possibility that the consumer will make the 42 monthly payments, only to have the entire payment applied to the actual "full balance" resulting in the consumer still owing a portion of the debt.

69.     Treating the payments as being short of the actual full amount of the debt would permit AOR or third party debt collectors hired by the creditor to continue to try to collect on the same debt.

70.     The unsophisticated consumer could pay the 42 monthly payments and not know whether he or she has resolved the account.   <u>Exhibit C</u>. The language is confusing to the unsophisticated consumer.

71.     Moreover, the unsophisticated consumer could not determine whether timely making all payments under the payment plan would result in the creditor representing to credit reporting agencies that the account is paid in full, settled in full, or partially paid with outstanding balance.

72.     The language identified above is ambiguous and confusing. The letters purport to offer treatment of accounts as "paid in full" when the payments do not add up to the balance. The consumer who makes all the requested payments cannot know if AOR would actually treat and report the debt as settled or paid in full.

73.     The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt, in that a significantly larger portion of the balance may remain after a failed "settlement" than the few additional dollars or cents

remaining (usually due to the addition of interest or fees) after a "full payment." *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).

74. An account reported to a credit reporting agency as "settled in full" has a greater negative effect on a consumer's credit score than an account reported as "paid in full." Thus, consumers who are able to pay off a balance may wish to pay the entire amount instead of settle for a smaller amount to effect an improvement in their credit score.

75. AOR's misrepresentations are material misrepresentations because they mislead the unsophisticated consumer about the nature of the settlement offer.

### ***Bentley Letter***

76. On or about June 30, 2016, AOR mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "CITIBANK, N.A." (Citibank). A copy of this letter is attached to this complaint as Exhibit D.

77. The alleged debt identified in Exhibit D is a credit card account used for personal, family or household purposes.

78. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

79. Upon information and belief, Exhibit D is a form debt collection letter used by AOR to attempt to collect alleged debts.

80. Exhibit D contains the following text:


We can settle your past due account with our client, CITIBANK, N.A., for 45% off the balance! We will accept $3106.75 as a settlement.


As long as you haven't made other arrangements to repay this debt, you are eligible for this offer. For accounting purposes, to accept this offer please send the settlement amount within 30 calendar days after the date of this letter. If you wish to make a different payment proposal, please call us to discuss it.

11

Exhibit D.

81.    The letter purports to offer a settlement of 55% of the total alleged debt.

82.    The settlement offer in <u>Exhibit D</u> falsely states or implies that the settlement offer is valid only if payment is sent "within 30 calendar days after the date of this letter."

83.    Upon information and belief, AOR had authority from the creditor to settle consumers' accounts for 55% of the amount owed, or less, at any time.

84.    Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

85.    Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

86.    The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collectors including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

87.    AOR did not use the safe harbor language in <u>Exhibit D</u>.

88.    Upon information and belief, the deadline in <u>Exhibit D</u> to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

12

89.     Plaintiffs were confused by Exhibit A, Exhibit B, Exhibit C and Exhibit D.

90.     The unsophisticated consumer would be confused by Exhibit A, Exhibit B, Exhibit C and Exhibit D.

91.     Plaintiffs had to spend time and money investigating Exhibit A, Exhibit B, Exhibit C and Exhibit D, and the consequences of any potential responses to Exhibit A, Exhibit B, Exhibit C and Exhibit D.

92.     Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibit A, Exhibit B, Exhibit C and Exhibit D.

93.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this

13

reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

94.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

95.     The unsophisticated consumer fears being sued. *See, eg. Avila v. Rubin,* 84 F.3d 222, 229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.")

96.     AOR's and Capital One's misrepresentations are likely to cause emotional distress to the average customer. *See* Wis. Stat. § 427.105(1) ("actual damages shall include damages caused by emotional distress or mental anguish with or without accompanying physical injury proximately caused by a violation of this chapter"); *see also Brunton v. Nuvell Credit Corp.*, 325 Wis. 2d 135, 161 n.12, 785 N.W.2d 302, 314 n.12 (2010). (In WCA actions relating to debt collection, Wisconsin courts employ the FDCPA's objective "unsophisticated consumer" standard).

97.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt.

14

98. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

99. 15 U.S.C. § 1692e(5) specifically prohibits: "The threat to take any action that cannot legally be taken or that is not intended to be taken."

100. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

101. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

102. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

103. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

104. Wis. Stat. § 427.104(1)(L) also specifically prohibits a debt collector from "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## **COUNT I – FDCPA**

105. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

106. Count I is brought on behalf of Plaintiff Bentley.

107. Exhibit D includes false statements to the effect that the settlement offer payment must be received by a specific date.

15

108. Upon information and belief, the creditor and/or AOR would settle Plaintiff's and class members' debts at the offered discount and likely for less at any time, regardless of the supposed deadline.

109. AOR violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT II – FDCPA

110. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

111. Count II is brought on behalf of Plaintiff Menear.

112. Exhibit C includes a payment plan offer that is misleading.

113. If a consumer chooses to mail in payments in an attempt to take advantage of the "pay in full" monthly installment plan listed on the letter, Defendant could, under one interpretation of Exhibit C, apply the payments toward the actual "full balance" instead of settling the debt.

114. It is also unclear whether completing the "pay in full" payment plan, which do not add up to the actual amount of the debt, would be treated as settlements because the payments are short of the actual balance.

115. Exhibit C misleads the unsophisticated consumer and encourages payments that do not actually settle the alleged debt, allowing AOR or third party debt collectors hired by the creditor to continue collecting the remaining balance.

116. Exhibit C also confuse the consumer as to whether an account would be reported to credit reporting agencies as "settled in full" or "paid in full" after completion of the payment plans, as the payments are short of the balances.

117. AOR violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

16

## COUNT III – FDCPA

118.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

119.     Count III is brought on behalf of Plaintiff Menear.

120.     The statement in <u>Exhibit C</u> that AOR will consider the debt paid in full if Plaintiff completes the monthly payment plan, which fails to add up to the full amount of the debt, is inherently or apparently contradictory.

121.     The unsophisticated consumer would have no idea how a debt could be paid in full when the full balance was not actually paid.

122.     The language is intended to make the consumer call AOR, subjecting him or her to additional collection efforts.

123.     AOR violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT IV – FDCPA

124.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

125.     Count IV is brought on behalf of Plaintiff Menear.

126.     The references in <u>Exhibit B</u> to "Interest," "Fees," and  "Non-Interest Charges" are false, misleading and confusing.

127.     AOR threatened to add interest and fees to Plaintiff's debts when AOR is not entitled to any fee and does not add interest to accounts such as Plaintiff's.

128.     AOR's misrepresentation of the amounts it would attempt to collect, is an unfair and/or unconscionable method by which to try and collect an alleged debt.

17

129.    As these statements are threatening and/or confusing to the unsophisticated consumer recipient so as to falsely imply that the creditor is entitled to receive a collection fee, they are an unfair and/or unconscionable method for attempting to collect a debt.

130.    The unsophisticated consumer would be confused by the nebulous references in AOR's letter to "Fees," and "Non-Interest Charges" and would have no idea what those charges are, potentially could be, or whether they would be legitimate.

131.    AOR violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692f(1).

## COUNT V – FDCPA

132.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

133.    Count V is brought on behalf of Plaintiff Menear.

134.    Exhibit B falsely threatens that if Plaintiff does not reach a payment agreement soon with AOR that Capital One may refer Plaintiff's account to an attorney for legal action.

135.    The threat was false and misleading to the unsophisticated consumer.

136.    AOR has no knowledge of or influence on Capital One's internal procedures with respect to bringing lawsuits, and thus had no basis to include the language from Exhibit B, quoted in Paragraph 47 of this Complaint.

137.    AOR's conduct violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT VI – WCA

138.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

139.    Count VI is brought on behalf of Plaintiff Menear.

140.     Exhibit A and Exhibit B threaten an action against the consumer – legal action – notwithstanding the fact that, upon information and belief, neither AOR nor Capital One had any intention of initiating such action.

141.     Instead of suing Plaintiff Menear after mailing Exhibit A, Capital One instead hired AOR to collect the debt, as evidenced by Exhibit B.

142.     Further, AOR had no knowledge of Capital One's litigation procedures and no basis to threaten legal action by Capital One in Exhibit B.

143.     AOR and Capital One violated Wis. Stat. § 427.104(1)(L).

144.     Plaintiffs further seek injunctive relief under the WCA, Wis. Stat. § 426.109(1).

## COUNT VII -- WCA

145.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

146.     Count VII is brought on behalf of Plaintiff Menear.

147.     Exhibit B threatens to enforce a right to a collection fee, even though Defendant knew or should have had reason to know that no such right existed at the time the letters were sent.

148.     Exhibit B also threatens to collect interest, even though AOR does not add interest to accounts such as Plaintiff's.

149.     AOR violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## CLASS ALLEGATIONS

150.     Plaintiffs bring this action on behalf of four classes.

19

151.     Class One consists of (a) all natural persons in the State of Wisconsin (b) to whom Capital One sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) and who were subsequently mailed a collection letter by AOR regarding the same Capital One account, (d) seeking to collect a debt incurred for personal, family or household purposes, (e) between March 3, 2016 and March 3, 2017, inclusive, (f) that was not returned by the postal service. Class One shall be called the "False Threat of Litigation Class," and Plaintiff Menear shall be the designated representative.

152.     Class Two consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit B</u> to the complaint in this action, (c) seeking to collect a debt incurred for personal, family or household purposes, (d) between March 3, 2016 and March 3, 2017, inclusive, (e) that was not returned by the postal service. Class Two shall be called the "False Threats Class," and Plaintiff Menear is the designated representative.

153.     Class Three consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit C</u> to the complaint in this action, (c) seeking to collect a debt incurred for personal, family or household purposes, (d) between March 3, 2016 and March 3, 2017, inclusive, (e) that was not returned by the postal service. Class Three shall be called the "Paid in Full Class," and Plaintiff Menear shall be the designated representative.

154.     Class Four consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit D</u> to the complaint in this action, (c) seeking to collect a debt incurred for personal, family or household purposes, (d) between March 3, 2016 and March 3, 2017, inclusive, (e) that was not returned by the postal service.

Class Four shall be called the "Settlement Date Class," and Plaintiff Bentley shall be the designated representative.

155.    Each Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each Class.

156.    There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f and 1692f(1) and Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

157.    Plaintiffs' claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

158.    Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

159.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

**JURY DEMAND**

160.    Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a)    actual damages;

(b)    statutory damages;

(c)     injunctive relief, including but not limited to an order that Capital One not send letters threatening a lawsuit or referral to an attorney to consumers before an actual determination is made to do so;

(d)     attorneys' fees, litigation expenses and costs of suit; and

(e)     such other or further relief as the Court deems proper.

Dated:  March 3, 2017

                                    **ADEMI & O'REILLY, LLP**

                        By:     s/ John D. Blythin
                                Shpetim Ademi (SBN 1026973)
                                John D. Blythin (SBN 1046105)
                                Mark A. Eldridge (SBN 1089944)
                                Denise L. Morris (SBN 1097911)
                                3620 East Layton Avenue
                                Cudahy, WI 53110
                                (414) 482-8000
                                (414) 482-8001 (fax)
                                sademi@ademilaw.com
                                jblythin@ademilaw.com
                                meldridge@ademilaw.com
                                dmorris@ademilaw.com

22